John W. GREEN, State Bank Commissioner
of the State of Delaware, Defend-
ant Below, Appellant,

v.

WILMINGTON SAVINGS FUND SOCIETY,
Plaintiff Below, Appellee.

Supreme Court of Delaware.

Sept. 5, 1973.

James T. Perry, Deputy Atty. Gen., Wilmington, for defendant below, appellant.

George Tyler Coulson of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, appellee.

Rodman Ward, Jr., and Eduard F. von Wettberg, III, Wilmington, for Delaware Bankers Assn., Amicus Curiae.

Before HERRMANN, C. J., and CAREY and DUFFY, JJ.

HERRMANN, Chief Justice:

The issue here is the Superior Court's scope of review upon appeal from the State Bank Commissioner's denial of an application for a branch bank office.

The Wilmington Savings Fund Society (hereinafter "Bank") applied to the State Bank Commissioner for authority to open a branch office under 5 Del.C. § 933.[1] The Commissioner denied the application on the ground that the Bank had not carried its burden of demonstrating public convenience and necessity under § 933. The Bank appealed to the Superior Court under 29 Del.C. § 8809(g).[2] The parties stipulated that the Superior Court consider the matter *de novo*. Later, the Commissioner moved to vacate the stipulation on the ground that the Superior Court lacked jurisdiction to consider the matter *de novo*. The Superior Court denied the motion to vacate. See Del., 300 A.2d 225. This appeal is from that denial.

## I.

The Bank's basic position, accepted by the Superior Court, is that there was no "hearing" before the Commissioner; that, therefore, there is no "record" for review by the Superior Court; that, accordingly, the judicial review upon this appeal must be *de novo*.

■ The error below lies in the assumption that the Commissioner was required to hold a hearing resulting in a transcript, before ruling upon the Bank's application under § 933, thus providing a "record" for review upon appeal to the Superior Court. Unlike other sections of the Delaware

---

1. 5 Del.C. § 933 provides in pertinent part:
"§ 933. Branch office
"(a) Any savings bank or savings society, if authorized by its charter, may open a branch office or place of business, or branch offices or places of business in this State, upon application submitted to and approved by the State Bank Commissioner and upon the issuance of a certificate of authority of the State Bank Commissioner. The application shall state the exact location of the intended branch office and the necessity for its opening. The Commissioner shall inquire into the matter, and if it deems that the public convenience will be served thereby and that there is good and sufficient reason that the savings bank or savings society should have the branch

office, the Commissioner shall issue its written permission for the opening of the branch office. * * *."
As to the Commissioner's authority in this particular case, see Del., 288 A.2d 273.

2. 29 Del.C. § 8809(g) provides:
"(g) The Superior Court shall hear all appeals from the decisions or rulings of the State Bank Commissioner respecting the issuance, extension, renewal, suspension and revocation of licenses and certificates to transact business; applications to open a branch office or place of business; applications for a certificate of public convenience and advantage; mergers, consolidations and conversions; and amending of charters or certificates of incorporation."

Banking Law (see 5 Del.C. §§ 2725, 2903, 3106, 3111), § 933 does not require a hearing by the Commissioner. As an administrative agency, the Commissioner is given a broad mandate by § 933, simply requiring that he "shall inquire into the matter." This contemplates a wide-ranging ex parte investigation; it requires neither a hearing nor findings on a hearing record. In this respect, § 933 is similar to the provisions of the National Bank Act governing the establishment of new banks. See 12 U.S.C. § 26; Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

Here, the Commissioner inquired whether the Bank wished a hearing on its application; the Bank replied that it did not unless the Commissioner intended to deny the application; the Commissioner declined to hold a hearing on that premise.

The Commissioner announced his ruling by letter stating that the "application did not establish certain requirements as set forth by Section 933"; and he made specific reference to the requirements of § 933 relating to public convenience and necessity. The Commissioner's letter stated that his consideration of the application included "conferences relative to this application, and other related data compiled in my investigation." The record sent up by the Commissioner included no material on the "conferences" and "other related data"; it contained the Bank's application only.

The Bank's application, including additional information requested by the Commissioner and made an addendum thereto, consisted of 24 pages of typed and printed materials, forms, charts, tabulations, and a map; it covered a discussion of the "financial history and condition" of the Bank, the "adequacy of surplus or capital structure", its "future earning prospects" and the "convenience and need of the community" to be served by the proposed branch office. This was the sole "record" available for review upon the appeal to the Superior Court.

## II.

■ By Rule of Court and by the basic nature of the matter, the scope of review of the Superior Court upon appeal from a § 933 determination by the Commissioner is limited to a review on the record.

Superior Court Civil Rule 72(g) Del.C. Ann. provides: "Appeals shall be heard and determined by the Superior Court from the record of the proceedings below, except as may be otherwise expressly provided by statute." An appeal from a § 933 determination is governed by § 8809(g); nothing therein expressly provides for other than a review on the record.

■■ And the basic nature of the case dictates against a *de novo* judicial review as a constitutional matter of separation of powers. The determination of public convenience and necessity is a matter of legislative discretion. The power in this instance has been delegated by the General Assembly via § 933 to the Commissioner as an administrative agency. The function, therefore, is legislative and administrative, not judicial. It follows that the Superior Court may not by a *de novo* proceeding substitute its judgment for that made by the Commissioner under § 933. Newport National Bank v. Hawksley, 92 R.I. 433, 169 A.2d 616 (1961); Peoples Bank v. Bryan, 55 Tenn.App. 166, 397 S.W.2d 401 (1965); Chemical Bank and Trust Company v. Falkner, Tex.Supr.Ct., 369 S.W.2d 427 (1963); United States v. Crocker-Anglo National Bank (N.D.Cal.) 263 F.Supp. 125 (1966). [3]

## III.

■■ Since a hearing by the Commissioner was neither required nor held, the standard for judicial review is not the "sufficient substantial evidence" test appli-

---

3. Indeed, the constitutionality of a statutory assignment to the judiciary of such legislative function would be highly questionable under the separation of powers doctrine. E. g., American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky.Ct.App., 379 S.W. 2d 450 (1964).

cable when reviewing the findings of an administrative agency made on a hearing record. The scope of judicial review here is limited to a determination of whether the Commissioner's decision was arbitrary and capricious and an abuse of discretion, or otherwise not in accordance with law; and the Bank has the burden of proof in this regard. See Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). If the record before the Superior Court is found insufficient to enable it to fulfill its assigned review function, the remedy is a remand to the Commissioner with appropriate instructions.

■ A stipulation of the parties may not enlarge the scope of judicial review, especially when it is subject to constitutional limitations.

\* \* \*

Accordingly, the order below must be reversed and the cause remanded for further proceedings consistent with this Opinion.[4]

---

4. This case demonstrates again the urgent need for a Delaware Administrative Procedures Act.