ALVIN CANTON and M. JUANCITO SHACKLETON

v.

HENRITA TODMAN, Supervisor of Elections, Appellant

No. 16,189

United States Court of Appeals

Third Circuit

Argued October 18, 1966

Decided October 24, 1966

*See, also, 367 F.2d 1005*

ALFRED L. SCANLON, ESQ. (SHEA and GARDNER), Washington, D.C., *for appellant*

RONALD H. TONKIN, ESQ. (YOUNG, ISHERWOOD and MARSH), Christiansted, St. Croix, Virgin Islands, *for appellees*

MARVIN M. KARPATKIN, ESQ. (KARPATKIN, OBRENSTEIN and KARPATKIN), New York, New York, *for appellees*

Before MARIS, McLAUGHLIN and KALODNER, *Circuit Judges*

MARIS, *Circuit Judge*

## OPINION OF THE COURT

This is an appeal by the defendant, the Supervisor of Elections of the Virgin Islands, from an order of the District Court of the Virgin Islands, entered October 1, 1966, directing her (a) to accept and file the plaintiffs' petitions for nomination as Republican candidates for the Legislature at the primary election of 1966, (b) to declare that there shall not be a party primary with respect to the Republican Party nominations, and (c) to declare the 15 candidates, including the plaintiffs, whose nomination petitions had been filed with her, to be nominated by the Republican Party for election to the Territorial Legislature at the general election to be held on November 8, 1966. Because of the imminence of the election the hearing and decision of the appeal have been in every way expedited.

The plaintiffs and 13 other individuals by nomination petitions filed September 6, 1966 had been nominated by the Territorial Committee of the Republican Party[1] as candidates for the Territorial Legislature to be voted on for the

---

[1] 18 V.I.C. § 344(c) authorizes the territorial committee of each party to propose candidates to be placed on the party ballots at the ensuing primary election, along with candidates proposed by petitions of voters, to be voted on at the primary election for nomination as the candidates of the party at the ensuing general election.

Republican nominations at the primary election to be held on October 4, 1966. No other candidates filed petitions for the Republican nominations. Under these circumstances 18 V.I.C. § 359 provides:

"If the number of candidates of a particular political party who filed nomination petitions for nomination by such party for election to a particular public office exactly equals the number of persons which such party may nominate therefor, no party primary with respect to such nominations shall be held, and, in such a case, the Supervisor of Elections shall declare the candidates who filed the petitions to be nominated for election to such office. Provided, that if a lesser number of candidates have filed nomination petitions than there are candidates to be elected or where no candidates have filed nomination petitions, the Supervisor of Elections shall nevertheless authorize a primary for write-in candidates."

It appears, however, that the Legislature of the Virgin Islands had enacted the Act of September 1, 1966, No. 1815, subsections (b) and (c) of section 11 of which contained the following provisions:

"(b) In addition to other requirements of the law, every person who files for nomination for public office at the primary election of 1966, pursuant to subsection (b) or (c) of section 344, Title 18, Virgin Islands Code, as amended shall submit to the office of the Supervisor of Elections or her deputy not later than September 12, 1966, and not later than the ordinary closing hour of the office of the Supervisor of Elections or her deputy on that date, a signed oath of allegiance to the political party in whose primary election he wishes to be a candidate, in the following form:

'I ..............................., do solemnly pledge that I will espouse and pursue the principles and policies of the ........................... Party of the Virigin Islands and that I will support every candidate of the ........................... Party who is nominated for public office at the 1966 primary election and I will not support any candidate or any other political party or body or any independent candidate for public office at the 1966 general election.'

(c) No person who refuses or fails to submit the oath required by subsection (b) of this section shall have his name printed on the 1966 primary ballot of a political party for which he files a nomination petition."

It further appears that the defendant informed the plaintiffs and their fellow Republican candidates that they were required to file with her the oath prescribed by section 11(b) of the Act of September 1, 1966 in order to render their nomination petitions valid. The plaintiffs thereupon filed the present complaint for declaratory and injunctive relief. On September 12, 1966 the district court issued a temporary restraining order and on October 1, 1966, after hearing, the order here appealed from.

The district court held that the nomination petitions of the plaintiffs and their 13 associates were valid without their filing the loyalty oath in question. The court took the view that section 11(b) of the Act of September 1, 1966, construed in the light of section 359 of title 18, required the oath only of candidates who were about to enter into a contest for the party nominations with other candidates at a primary election. The court held that it did not apply to the plaintiffs and their associates since, as the only 15 Republican candidates who had filed nomination petitions, no Republican primary election could lawfully be held, and they were entitled to be declared the Republican candidates for the general election. We are in accord with the view thus taken by the district court.

██ Section 11(b) of the Act of September 1, 1966 provides that every person who files *for nomination* for public office *at the primary election of 1966* must file the party loyalty oath by September 12, 1966. The oath itself indicates that it is applicable only to those persons who are contesting for the party nominations in a primary election. For its most basic language is "that I will support every candidate of the .................... Party *who is nominated* for public office *at the 1966 primary election*" (Emphasis supplied). The obvious purpose of this oath was to bind a candidate, if defeated in the party primary election, to support the party candidates who defeated him and were

nominated at the primary election. It can have no application to candidates who have no party opposition and are themselves entitled to be declared the party candidates at the election. It scarcely needs a pledge by them to assure the party that such candidates will support themselves! Moreover, it will be observed that the only penalty for failure to file the loyalty oath is the provision of section 11(c) of the Act of September 1, 1966 that a person who refuses or fails to submit the oath shall not have his name printed on the primary ballot. In other words, he is not permitted to be a candidate in a primary election against other candidates who may defeat him and whom, absent the pledge of the oath, he may fail to support in the election. It is significant that there is no similar provision in the law to the effect that a candidate who is declared the uncontested nominee of the party under 18 V.I.C. § 359, without a primary election, may not have his name printed on the general election ballot if he fails to file the loyalty oath. And finally it is most significant that, while nomination petitions were required to be filed not later than September 6, 1966, the loyalty oaths were not required to be filed until September 12th. Immediately after September 6th it could be determined which candidates were entitled forthwith to be the uncontested party nominees without a primary election and which would be required to contest against others for the party nominations in the primary election. Thus by deferring the filing of the oaths until September 12th the Legislature gave the Supervisor of Elections an adequate period of time in which to determine which candidates were in the former group and, therefore, not required to file the oath and which were in the latter class and accordingly required to file it.

■ It is not suggested by the defendant that the plaintiffs' nomination petitions are defective in any respect save for the absence of the loyalty oath. Obviously they were

perfectly valid on September 6th when they were timely filed. As such they entitled the plaintiffs and the 13 other candidates associated with them to be declared on September 7th the regularly and validly nominated candidates of the Republican Party to be placed upon the ballots for the general election to be held on November 8, 1966. At that time, therefore, the plaintiffs and their 13 associates were not candidates "for nomination for public office at the primary election of 1966" to whom section 11(b) of the Act of September 1, 1966 applied. On the contrary they were then the nominees of the Republican Party for election at the general election of 1966. As we have seen there is no provision of the Act of September 1, 1966 which would preclude placing their names as such upon the ballots for the general election.

The plaintiffs urge that the imposition of the loyalty oath violates first amendment guarantees of freedom of speech, freedom of assembly and freedom of political association, that it constitutes a bill of attainder, that its provisions are so vague and indefinite as to deny due process of law, and that it imposes a political test oath upon an incipient public officer in violation of section 3 of the Revised Organic Act. In addition, they strongly urge that the Act of September 1, 1966 is a special act solely intended to harass a political minority during the 1966 election campaign and that it violates 48 U.S.C.A. § 1471 prohibiting special legislation by territorial legislatures where general legislation could be made applicable. The district court did not reach these contentions, however, nor do we, although persuasive arguments are presented in support of them. We need only say that compelling an individual who is taking the first step toward, hopefully, becoming a member of the Virgin Islands Legislature, to swear that he will espouse *and pursue* the principles of a particular

political party, indefinitely and without limit of time, might well be regarded as imposing a political test as a qualification to a public office under the Government of the Virgin Islands in violation of section 3 of the Revised Organic Act of 1954, as amended by the Act of August 28, 1958, PL 85–851. Compare Harrington v. Vaughan, 1920, 211 Mich. 395, 179 N.W. 283. Certainly Ray v. Blair, 1952, 343 U.S. 214, strongly relied upon by the defendant, is not in point. For that case involved presidential electors whose only function is to vote for president and vice-president and who, in order to reflect the popular will, are traditionally bound to cast those votes for the candidates nominated by the national conventions of their political parties. Here the pledge to pursue indefinitely the principles and policies of a political party, presumably those principles and policies announced from time to time by the party organization, would tend to bind the legislators to the party leaders without individual freedom of thought or independence of action, tied up and delivered like bunches of beets. This is what happens in totalitarian countries where legislators vote like automatons as their party leaders tell them to, but it is not the practice in free America where our democratic heritage can best be preserved if legislators are free to employ in the discharge of their duties their own individual views and judgment in the light of their personal responsibility as representatives of the whole community.

The order of the district court will be affirmed.